**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PRIMERICA FINANCIAL SERVICES, INC., and PFS INVESTMENTS INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:15-cv-10275 |
| v. | ) ) | Judge Guzman |
| DAVID M. CHARNOT, | ) ) ) | |
| Defendant. | ) | |

## PRIMERICA'S MOTION FOR TEMPORARY
## RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs Primerica Financial Services, Inc. ("PFS") and PFS Investments Inc. ("PFSI") (collectively, "Primerica") respectfully move this Court pursuant to Fed. R. Civ. P. 65 for the entry of a Temporary Restraining Order followed by a Preliminary Injunction against Defendant David M. Charnot ("Charnot") to protect against his willful and ongoing violations of his contracts with Primerica, including misuse of confidential information and solicitation of clients and agents in breach of the restrictive covenants in his agreements with Primerica, and the irreparable harm that flows from those breaches. In support of that Motion, Primerica has filed its supporting Memorandum, together with the Affidavits of Robert Peterman, Cynthia Kyle-Mitchell, Kimberly Geiger, Don Williams, Shirley Watson, and Daniel Hildebrand and other supporting exhibits, and states as follows:

1. Charnot was associated with Primerica for more than fourteen years and was a former Regional Vice President ("RVP") and designated with the Financial Regulatory Authority ("FINRA") as a Branch Manager.

2.      While maintaining a façade of loyalty to Primerica, Charnot planned and executed a scheme to take confidential business information, securities-licensed sales agents and valuable customer assets to a Primerica competitor, H.D. Vest Investment Services ("H.D. Vest").

3.      These actions were in deliberate violation of Charnot's binding contracts with Primerica, and for his own financial gain, while hiding his disloyal intentions from Primerica and abusing his status as a senior representative of the Company.

4.      To date, Primerica's investigation shows that Charnot breached his contracts through a calculated plan of repeated misconduct, including the following:

  a.  accessing Primerica's confidential information to prepare for and launch his scheme to take Primerica's customers and sales agents to H.D. Vest;

  b.  improperly switching his business affiliation and loyalty to H.D. Vest, even when he was still registered with Primerica and without any notice to the Company;

  c.  conducting a "mandatory meeting" with a select group of Primerica agents to solicit them to join H.D. Vest;

  d.  wrongfully soliciting numerous Primerica customers to move to H.D. Vest; and

  e.  failing to return Primerica's confidential information.

5.      Charnot's scheme has already caused severe and irreparable harm to the Company.  Charnot has improperly switched almost $2 million of investment assets for at least fourteen Primerica clients to H.D. Vest and induced at least nineteen of the Company's licensed securities agents to join the competing enterprise he established for H.D. Vest.

6.      The substantial harm caused to Primerica is ongoing and increasing as the result of Charnot's continued breaches of his contracts.  There are more than 270 other Primerica

clients that Charnot serviced while at the Company, with total investment assets exceeding $12.9 million. Before their departure, the former Primerica agents now with Charnot at H.D. Vest serviced Primerica accounts with total investment assets of more than $25 million. Those valuable Primerica client relationships now are at risk as the result of Charnot's improper solicitations and other breaches of his contracts.

7. Primerica has a protectable right not to have its agents, customers, and confidential information improperly solicited and misappropriated by Defendant Charnot.

8. Primerica will be irreparably harmed and without an adequate remedy at law if Defendant Charnot is not enjoined from improperly soliciting valuable customers and sales agents from Primerica and improperly using Primerica's confidential information on behalf of its competitor, in violation of his restrictive covenants.

9. Primerica is likely to succeed on the merits of its claim that Charnot has breached his contracts with Primerica.

10. The balancing of the harms favors Primerica because a failure to enjoin Charnot will result in loss of Primerica's work force, clients, and confidential information, whereas enjoining Charnot, maintaining the status-quo, and requiring Charnot to comply with the terms of his Agreements will in no way harm Charnot.

11. A temporary restraining order will promote the public interest in preserving the enforceability of contracts.

12. Accordingly, Primerica can satisfy all of the elements necessary for this Court to grant the emergency injunctive relief that it seeks.

**WHEREFORE**, for the foregoing reasons, as more fully set forth in Primerica's supporting Memorandum of Law and the accompanying Affidavits and exhibits, Primerica respectfully requests that this Court: (a) grant the Motion for a Temporary Restraining Order and

Preliminary Injunction; (b) enter a temporary restraining order against Defendant Charnot; and

(c) grant such further relief as the Court deems necessary and appropriate.

Dated: November 16, 2015

Respectfully submitted,

JENNER & BLOCK LLP

*/s/ Terri L. Mascherin*
Terri L. Mascherin
Daniel T. Fenske
Laura E.B. Hulce
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350

*Of Counsel:*
Brett A. Rogers
Rogers & Hardin LLP
2700 International Tower
229 Peachtree Street NE
Atlanta, Georgia 30303
Telephone: (404) 420-4612

*Attorneys for Plaintiffs Primerica
Financial Services, Inc., and PFS
Investments Inc.*

4